Stanley W. ANDERSON, Jackie Bohne, B.J. Smail, Del Deering, James Loock, Elizabeth Simons, Alice U'Ren, Allen Mulderink, Jennifer Determann, John Anderson, David Koster, on behalf of themselves and as representatives of a class of all others similarly situated, Plaintiffs-Appellants,†

v.

The REGENTS OF the UNIVERSITY OF CALIFORNIA, Defendant-Respondent,

Don KRAMER, individually, and d/b/a Nation Wide Sports Production, S & E Travel & Tours, a foreign corporation and Tickets and Tours, Brenda Trainer, individually, and d/b/a Pyramid Travel, Jeffrey Manley, individually and Monona Travel, Inc., Scott Smith, individually, and Ian Chalmers, individually, and Charter Clubs International, Inc., a Georgia corporation, Jerry L. Norsman, individually, and d/b/a The Norse Company, a Wisconsin corporation, d/b/a Norse Company Travel Centre, Jeffrey Bowles, individually, and d/b/a Bowles Travel Service, Inc., a Wisconsin corporation, d/b/a Carlson Travel Network/South Towne Travel, Winston Barker, individually, and d/b/a Barker Tours, and Sports Tours, Mark Winzenried, individually, and d/b/a World Athletic Tours, Inc., a Wisconsin corporation, Meyer-Larson Travel Enterprises, Inc., a Wisconsin corporation, Ali Sadrzadeh, d/b/a Apollo Travel Agency, US Tours, Arnco International, Ltd., a foreign corporation, The Melbourne Group/US Tours, Koepcke

---

†Petition to review denied.

Travel Agency, Inc., a Wisconsin corporation, National Bank of Royal Oak, a national bank domiciled in Michigan, Entertainment SPLS, Incorporated, a foreign corporation, d/b/a Ticket Time, State of California, Defendants,

BOARD OF REGENTS OF the UNIVERSITY OF CALIFORNIA, Defendant-Respondent,

UNIVERSITY OF CALIFORNIA LOS ANGELES, University of California Los Angeles Athletic Department, Defendants.

Court of Appeals

*No. 95–0436. Oral argument November 16, 1995.—Decided July 18, 1996.*

(Also reported in 554 N.W.2d 509.)

For the plaintiffs-appellants the cause was submitted on the briefs of *James A. Olson, Kent I. Carnell* and *Steven J. Schooler* of *Lawton & Cates, S.C.* of Madison. Oral argument was by *James A. Olson.*

For the defendant-respondent the cause was submitted on the brief of *Richard C. Ninneman, Donald K. Schott,* and *Jeffrey O. Davis* of *Quarles & Brady* of Milwaukee. Oral argument was by *Donald K. Schott.*

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

GARTZKE, P.J. Stanley W. Anderson, et al.[1] appeal from an order dismissing their complaint against the Board of Regents of the University of California (UCLA) for failure to state a claim. Plaintiffs were customers of tour operators and ticket agencies with whom they contracted for tour packages to the

---

[1] Plaintiffs are Stanley W. Anderson, Jackie Bohne, B.J. Smail, Del Deering, James Loock, Elizabeth Simons, Alice U'ren, Allen Mulderink, Jennifer Determann, John Anderson and David Koster. Plaintiffs state that this suit would certify as a class action against the various defendants. Before UCLA was joined as a defendant, plaintiffs and certain travel agents stipulated to a class certification, which defined the plaintiff class as "all individuals who purchased a package tour that included tickets to the 1994 Rose Bowl in Pasadena, California, from [specified travel agencies] and were not provided Rose Bowl tickets by [such agencies]." UCLA has been added as a defendant and it has not been certified as a class action.

1994 Rose Bowl game held on January 1, 1994, in Pasadena, California. The tours included tickets to the Rose Bowl game. When plaintiffs arrived at Pasadena they learned that tickets were unavailable, and they did not attend the game or they paid more than the $46 face value for tickets.

Plaintiffs allege that UCLA contracted for the plaintiffs' benefit but violated the contract, interfered with contracts the plaintiffs had with tour operators, engaged in a conspiracy, and negligently distributed its Rose Bowl allotment of tickets, to the plaintiffs' damage. We conclude that the complaint fails to state a claim against UCLA and affirm the order dismissing the complaint.

## I. SUMMARY OF FACTS

The trial court summarized the factual allegations in plaintiffs' second amended complaint as follows:

> The Rose Bowl is sponsored yearly by the Tournament of Roses Association ("Tournament") and features football teams from the Pacific Ten Conference ("PAC-10") collegiate athletic conference and the Big Ten Conference ("The Big Ten") collegiate conference. In 1994, the PAC-10 was represented by the University of California Los Angeles (UCLA) while the University of Wisconsin represented the Big Ten. UCLA is a public university of the State of California, governed by Cal. Regents.
>
> Participation in the 1994 Rose Bowl [was] controlled by an agreement between the PAC-10, the Big Ten and the Tournament, entitled ["]PAC-10 TOURNAMENT BIG TEN ROSE BOWL AGREEMENT["] ("the Agreement")[,] which was signed by the parties on March 16, 1992. The Agreement contained several provisions governing ticket sales and

distribution between the two conferences. Paragraph 23, entitled ["]Ticket Distribution,["] states in part:

. . . .

e. Except for mutual complimentary tickets, all game tickets shall be sold at full face value to the persons to whom they are consigned. The price of such tickets shall be included in the determination of Net Income. Notwithstanding the foregoing, member institutions of the PAC-10 and/or the BIG TEN may establish lower ticket prices for bona fide members of their student bodies; provided, however, that said institution shall account for all such tickets at full face value.

Paragraph 24, entitled ["]Ticket Allocation,["] states in part:

. . . .

b. In the event a Conference representative anticipates that it may have unused tickets, it may offer to sell such tickets first to the other Conference, and then to the Tournament. . . . No other party is obligated to accept such ticket. . . . The tickets may be offered for sale and sold only at the established prices thereof.

c. The parties agree not to place any excess tickets on general public sale (i.e., other than to its season ticket holders, alumni, faculty, students, and the like) without the prior consent of the [Rose Bowl Management Committee]. The RBMC may, rather than allowing such public sale,

either take the tickets on consignment from the offering institution or acquire the tickets itself.

Paragraph 36 of the Agreement provides that the PAC-10, the Big Ten and the Tournament agree to indemnify each other in the event of breach. Paragraph 37 of the Agreement provides that disputes which cannot be resolved by the RBMC shall be resolved by arbitration.

It is the policy of the Tournament to prohibit resale of its tickets by its members to the general public. This policy protects the public from scalpers who sell tickets at inflated prices. The Tournament does not condone the sale of tickets at more than face value; sale to ticket brokers; nor purchase of packages that purport to include tickets to the Rose Bowl game.

UCLA was allotted 40,000 tickets while the University of Wisconsin was allotted 19,000. The full face value of these tickets was $46.00. UCLA "sold" 4,000 of its tickets to an anonymous donor on December 15, 1993, after having refused to transfer part of its ticket allotment to the University of Wisconsin on December 10, 1993. UCLA also sold 1,223 tickets to non-season ticket holders for face value on the condition that they would buy UCLA 1994 football season's tickets. As a consequence of these transactions, UCLA sold tickets at higher than face value.

As a result of UCLA's actions, it is alleged that a substantial number of tickets were placed in the hands of scalpers. Accordingly, the plaintiffs allege that they: (1) suffered annoyance, inconvenience, and emotional suffering; (2) were deprived of the value of their tour package by virtue of not seeing the game; and (3) paid excessive prices for their

tickets. The plaintiffs seek damages, including punitive damages, based on claims of breach of contract, conspiracy and negligence.

## II. TRIAL COURT'S DECISION

UCLA moved to dismiss the complaint for failure to state a claim. The trial court concluded that California law applies to plaintiffs' claim for breach of contract. Although UCLA is not a named party to the contract, the trial court concluded that it is a party to the Agreement. The court rejected the plaintiffs' claim that they were third-party beneficiaries of the Agreement, and the court therefore held they lack standing to sue for its breach. So far as is material to this appeal, the court held that the plaintiffs' conspiracy claim fails because plaintiffs did not allege or identify the person or persons with whom UCLA conspired. Because the court had already held the plaintiffs lacked standing to sue on the contract, the court concluded they lacked standing to sue for intentional interference with their contract. The court held that the plaintiffs failed to state a claim for negligence because plaintiffs failed to allege that UCLA has a duty to the plaintiffs to make tickets available to their travel agents.

Having found that the complaint fails to state a claim against UCLA, the trial court granted the motion to dismiss.

## III. STANDARD OF REVIEW

■■■■

A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint. *Bartley v. Thompson*, 198 Wis. 2d 323, 331, 542 N.W.2d 227, 230 (Ct. App. 1995), *cert. denied*, 116 S. Ct. 1829 (1996).

The motion raises a question of law which we review de novo. *Id.* We liberally construe the pleading in favor of its stating a claim, if reasonably possible. *Jenkins v. Sabourin*, 104 Wis. 2d 309, 313, 311 N.W.2d 600, 602 (1981). We accept as true all facts the plaintiff properly pleaded and reasonable inferences from those facts, and we will dismiss the complaint only if the plaintiff cannot recover under any circumstances. *Bartley*, 198 Wis. 2d at 332, 542 N.W.2d at 230. We may affirm for reasons the trial court did not consider.

## IV. BREACH OF CONTRACT

### A. California Law Governs the Contract Issues

█

The Agreement provides in part, "This Agreement shall be governed by the laws of the State of California." Under Wisconsin law, the parties to a contract may agree that the law of a particular jurisdiction controls their contractual relations. *First Wis. Nat'l Bank v. Nicolaou*, 85 Wis. 2d 393, 397 n.1, 270 N.W.2d 582, 584 (Ct. App. 1978). We therefore look to California law to determine the contractual relationship, if any, between the parties.

### B. UCLA as a Party to the Agreement

█

Plaintiffs contend that UCLA is a party to the Agreement. UCLA contends this cannot be, since UCLA is not referred to in the Agreement as a party. The Rose Bowl Agreement is between three named entities: the Big Ten, the PAC-10 and the Tournament.[2] Under California law, one who is not a party to

---

[2] We later refer to them as "the named parties."

a contract cannot be sued for its breach. *Fruitvale Canning Co. v. Cotton*, 252 P.2d 953, 955 (Cal. Ct. App. 1953), *overruled on other grounds, Lucas v. Hamm*, 364 P.2d 685, 689 (1961).

The Agreement provides that PAC-10 consists of ten western universities, including the University of California, Los Angeles. In § 44(a) of the Agreement, PAC-10 warranted it is authorized to enter the Agreement, and

> that all required consents and authorizations by all bodies of the PAC-10 member institutions have been obtained and that the PAC-10 is authorized to sign this Agreement on the PAC-10's behalf, subject to final ratification of the signed Agreement by the chief executive officer of each institution of the PAC-10.

Although nothing in the record discloses whether the chief executive officer of UCLA ratified the Agreement, it is beyond dispute that UCLA accepted benefits derived from it. Acceptance of benefits under a contract is the equivalent of a consent to the obligations arising from it. California Civil Code § 1589; *Thompson v. Swiryn*, 213 P.2d 740, 747 (Cal. Ct. App. 1950). We conclude that UCLA is a party to the Agreement.

## C. Plaintiffs as Third-Party Beneficiaries

Plaintiffs contend that the contract provisions governing ticket sales and prohibiting ticket "scalping" primarily benefited prospective ticket holders by limiting the sale price of each ticket to its face value, $46. As prospective ticket purchasers, they contend that they are therefore third-party beneficiaries of the Agreement.

California Civil Code § 1559 provides, "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." A third party need not be specifically named as a beneficiary. *Marina Tenants Ass'n v. Deauville Marina Dev. Co.*, 226 Cal. Rptr. 321, 324 (Ct. App. 1986). "Expressly" in § 1559 means an express manner, in direct or unmistakable terms, explicitly, definitely or directly. *City and County of San Francisco v. Western Airlines, Inc.*, 22 Cal. Rptr. 216, 225 (Ct. App. 1962), *cert. denied*, 371 U.S. 953 (1963).

A person not specifically identified in the contract as a beneficiary may recover on it if he or she belongs to a class of persons for whose benefit the contract is made. *Marina Tenants*, 226 Cal. Rptr. at 324. If its terms necessarily confer a benefit upon a third person which only that person can enjoy, the person is a third-party beneficiary. *Id.* at 326 (citing *Zigas v. Superior Court*, 174 Cal. Rptr. 806, 810 (Ct. App. 1981), *cert. denied*, 455 U.S. 943 (1982)) ("[The] requirement of HUD approval of rent increases could only benefit the tenants."). The intent to benefit the third person must be evident from reading the contract as a whole in light of the circumstances under which it was entered. *Outdoor Servs., Inc. v. Pabagold, Inc.*, 230 Cal. Rptr. 73, 77 (Cal. Ct. App. 1986).

Reading the contract as a whole, it is unreasonable to conclude that it was intended solely to benefit potential purchasers of tickets. The plaintiffs do not allege that the Agreement itself was made primarily for their benefit, nor can they. The Agreement was entered to govern a sports event played by some 100 students, and to be attended by thousands of fans and watched by

millions. It governs which teams may play, the color of the uniforms they may wear, when bands may play and even the type of football which will be used during the game. It incorporates an agreement granting a television network exhibition rights, and it provides for distribution of Rose Bowl revenues. Whatever duties the named parties to the Agreement could possibly have undertaken with regard to plaintiffs relate solely to plaintiffs as potential spectators of the game, and for that the plaintiffs had to have tickets.

Plaintiffs allege that their interests as potential ticket holders advance their interests to those of third-party beneficiaries. They rely on section 23 of the Agreement to support their contention that they, as prospective ticket holders, are primarily benefited by the limitation in the Agreement fixing the sale price of each ticket to its face value, $46. We reject plaintiffs' analysis of section 23.

The first sentence in section 23(e) provides in relevant part, "[A]ll game tickets shall be sold at full face value and shall be accounted for at full face value by the persons to whom they are consigned." This provision does not benefit only the plaintiffs. It imposes both a ceiling and a floor on ticket prices. The intent to impose a floor is shown by an exception to the "full face value" requirement in a later sentence in subparagraph (e). That sentence permits the member institutions to "establish lower ticket prices for bonafide members of their student bodies." The floor on ticket prices does not benefit the plaintiffs.

Relying on *Zigas*, 174 Cal. Rptr. at 809, plaintiffs assert that, like the tenants in that case, plaintiffs as prospective ticket purchasers are the intended beneficiaries of the ticket contract provisions of the Agreement. In *Zigas*, the landlord had a contract with

Housing and Urban Development (HUD) which governed the landlord's relationship with his tenants. *Id.* at 807. The *Zigas* court held that the tenants were third-party beneficiaries of the contract partly because the purpose of the HUD contract was "narrow and specific: to provide moderate rental housing for families with children." *Id.* at 812.

Unlike the HUD contract construed in *Zigas*, section 23(e) of the Rose Bowl Agreement does not have a "narrow and specific" purpose which would benefit only plaintiffs. The provision that tickets be sold at full face value confers no benefit upon plaintiffs that only they may enjoy because it also establishes the minimum price for tickets.

Moreover, section 23(e) of the Agreement has a purpose which is unrelated to any possible benefit to the plaintiffs. The provision that tickets be sold at full face value is critical to the provision in the Agreement that if UCLA fails to sell tickets allotted to it, it must make up the difference in the value of unsold tickets in the accounting between the parties to the Agreement. [3] The full face value sales provision is, as the trial court ruled, a ticket accounting mechanism. Whatever benefit plaintiffs as potential ticket purchasers may enjoy as a result of that provision is only incidental. Persons who enjoy only incidental benefits resulting from an agreement between other parties are not third-party beneficiaries of the contract. RESTATEMENT (SECOND) OF CONTRACTS § 315, cmt. a (1981).[4]

---

[3] Section 24(a) provides in relevant part, "[E]ach party shall be chargeable with all tickets allocated to it . . . at the established sale price appearing on the face thereof."

[4] Plaintiffs also allege that they are third-party beneficiaries because of section 24 of the Agreement, relating to ticket allocation. On appeal, plaintiffs argue only that their interests

■■■■
Because the plaintiffs are not third-party beneficiaries of the Agreement, the trial court correctly ruled that they lack standing to sue for its breach. We therefore affirm the ruling that the complaint fails to state a claim for breach of contract.

## V. NEGLIGENCE

Plaintiffs assert that when UCLA sold 4,000 Rose Bowl tickets to one person, the reasonable inference is that the person acted as or supplied the tickets to a broker, and that person or the broker therefore had the power to control the market for Rose Bowl tickets and determine the price of the tickets. This, they assert, disrupted the "normal market" for Rose Bowl tickets. For that reason, Wisconsin fans were unable to buy tickets at a reasonable price or were unable to obtain them at all. Plaintiffs were therefore harmed by UCLA's sale of 4,000 tickets to one person, and it was foreseeable that harm would result from that sale to potential ticket buyers. For that reason, plaintiffs assert UCLA is liable to them for its negligence.

■■■■
When an alleged tort is related to a contract, a duty must exist independently of the performance of the contract for a cause of action in tort to exist. *Madison Newspapers, Inc. v. Pinkerton's, Inc.*, 200 Wis. 2d 468, 473, 545 N.W.2d 843, 846 (Ct. App. 1996). We ignore the existence of the contract when determining whether the alleged conduct is actionable in tort. *Id.*

---

as third-party beneficiaries arise under section 23, and that as third-party beneficiaries, they may sue UCLA for its alleged breach of section 24 of the Agreement. We deem plaintiffs to have abandoned their claim that section 24 itself gives rise to their interest as third-party beneficiaries under the Agreement.

Plaintiffs' negligence theory is consistent with Wisconsin law. The duty of a person alleged to have been negligent under Wisconsin law is stated in *A.E. Investment Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 483-84, 214 N.W.2d 764, 766 (1974):

> The duty of any person [alleged to have been negligent] is the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act. This is the view of the minority in *Palsgraf v. Long Island R.R. Co.*, (1928) 248 N.Y. 339, 162 N.E. 99 . . . .
>
> A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone. A party is negligent when he commits an act when some harm to someone is foreseeable. Once negligence is established, the defendant is liable for unforeseeable consequences as well as foreseeable ones. In addition, he is liable to unforeseeable plaintiffs.[5]

In this state, a negligent defendant is liable for economic loss. *Citizens State Bank v. Timm, Schmidt & Co.*, 113 Wis. 2d 376, 384-85, 335 N.W.2d 361, 365 (1983); *A.E. Investment Corp. v. Link Builders, Inc.*, 62 Wis. 2d at 490-91, 214 N.W.2d at 770; *Hap's Aerial Enters. v. General Aviation*, 173 Wis. 2d 459, 460, 496 N.W.2d 680, 681 (Ct. App. 1992).

---

[5]*A.E. Investment* has been applied in many cases. *See, e.g., Schuster v. Altenberg*, 144 Wis. 2d 223, 235-36, 424 N.W.2d 159, 164 (1988); *Wood v. Milin*, 134 Wis. 2d 279, 288, 397 N.W.2d 479, 483 (1986); *Johnson v. Misericordia Community Hosp.*, 99 Wis. 2d 708, 722-23, 301 N.W.2d 156, 164 (1981).

However, although Wisconsin negligence law makes the tortfeasor totally liable for all foreseeable and unforeseeable consequences of a negligent act, a court may limit or preclude that liability for public policy reasons. *Timm*, 113 Wis. 2d at 386, 335 N.W.2d at 366; *Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 737, 275 N.W.2d 660, 667 (1979). Ordinarily an appellate court will not decide public policy issues before a full factual resolution of the claims at trial. *Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 542, 247 N.W.2d 132, 140 (1976). But it is not always necessary to have a full trial before deciding the public policy question. *Schuster v. Altenberg*, 144 Wis. 2d 223, 241, 424 N.W.2d 159, 166 (1988); *Wilson v. Continental Ins. Co.*, 87 Wis. 2d 310, 324, 274 N.W.2d 679, 686 (1979); *Rieck v. Medical Protective Co.*, 64 Wis. 2d 514, 520, 219 N.W.2d 242, 245 (1974).

UCLA contends that under California law, it owed no duty to plaintiffs with respect to their negligence claim. Under California law, "an indispensable factor to liability founded upon negligence is the existence of a duty of care owed by the alleged wrongdoer to the person injured, or to a class of which he is a member." *Richards v. Stanley*, 271 P.2d 23, 25-26 (Cal. 1954) (holding defendant who left car unattended and unlocked with the ignition key in the lock had no duty to plaintiffs who suffered injury after thief stole defendant's car and collided with plaintiffs). Because plaintiffs do not dispute the contention in their reply, we assume plaintiffs cannot recover under California law. *Madison Teachers, Inc. v. Madison Metro. Sch. Dist.*, 197 Wis. 2d 731, 751, 541 N.W.2d 786, 794 (Ct. App. 1995). If plaintiffs cannot recover under Wisconsin law, however, no conflict exists between the laws of

the two states. We conclude that for public policy reasons, plaintiffs cannot recover against UCLA for its negligence.

In this state, recovery may be denied against a negligent defendant on grounds of public policy when: (1) the negligence is too remote from the injury; (2) the injury is wholly out of proportion to the culpability of the negligent tortfeasor; (3) in retrospect, it appears highly extraordinary that the negligence should have led to the harm; (4) allowance of recovery would place an unreasonable burden on the negligent tortfeasor; (5) allowance of recovery would likely open the door to fraudulent claims; or (6) allowance of recovery would enter a field having no sensible stopping point. *Coffey*, 74 Wis. 2d at 541, 247 N.W.2d at 140.

Because the demand for Rose Bowl tickets exceeded the number of available tickets, UCLA could not have prevented harm to at least some potential buyers, no matter what it did and no matter what the price at which it sold the tickets and no matter what the sale mechanics. If we were to allow plaintiffs to recover in negligence against UCLA, no rational stopping point would exist.

To allow recovery would place an unreasonable burden on UCLA. Unless bound by statute or contract, a seller may generally rely upon supply and demand to fix the price to allocate a scarce commodity among consumers. For us to allow recovery here would tell sellers that they cannot rely upon supply and demand for that purpose. Plaintiffs do not suggest an alternative method of allocation. We have already held that UCLA had no contractual duty to plaintiffs and no statute has been shown to apply. Perhaps allocation could have

been achieved by a lottery, but the impracticability of that method needs no further comment.

Because we conclude that plaintiffs in this case cannot recover under Wisconsin law, and because it is agreed they cannot recover under California law, we conclude that, regardless which state's law applies, plaintiffs cannot recover against UCLA on their negligence claim.

## VI. CONSPIRACY

No difference between the California and Wisconsin law of conspiracy has been brought to our attention. We therefore apply Wisconsin law.

Wisconsin defines a civil conspiracy as " 'a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful.' " *Cranston v. Bluhm*, 33 Wis. 2d 192, 198, 147 N.W.2d 337, 340 (1967) (quoted source omitted). To state a cause of action for civil conspiracy, the complaint must set forth the formation and operation of the conspiracy, the wrongful act or acts done pursuant to the conspiracy and the resultant damage from such acts. *Onderdonk v. Lamb*, 79 Wis. 2d 241, 247, 255 N.W.2d 507, 510 (1977).

The only allegation in the complaint expressly referring to a conspiracy is that UCLA "engaged in combinations and conspiracies to violate the Rose Bowl Agreement and which were otherwise unlawful in act or purpose."

UCLA cannot conspire with itself. No co-conspirator is named or described in the complaint. The allegation that UCLA put tickets in the hands of scalp-

489

ers does not establish that UCLA conspired with them. Similarly, the allegation that UCLA sold 4,000 tickets to an individual when it knew or should have known the tickets would be sold at a price greater than face value fails to show that UCLA conspired with that person. The acts of UCLA, the scalpers and the individual buyer are not alleged to have a nexus other than UCLA's sales to them. Thus, no concerted action is alleged. We need not pursue our analysis further.

We conclude the trial court properly dismissed plaintiffs' conspiracy charge against UCLA for failure to state a claim.

## VII. INTERFERENCE WITH CONTRACT

The parties appear to agree that no choice of law problem exists with regard to plaintiffs' claim that UCLA has interfered with their contractual relations with their tour operators who arranged travel packages for the plaintiffs. Both Wisconsin and California recognize the tort of interference with prospective economic relations. *Della Penna v. Toyota Motor Sales, U.S.A. Inc.*, 902 P.2d 740, 741 (Cal. 1995); *Cudd v. Crownhart*, 122 Wis. 2d 656, 658-59, 364 N.W.2d 158, 160 (Ct. App. 1985).

The elements of the tort are: a prospective contractual relationship on behalf of the plaintiff, knowledge by the defendant of the existence of the relationship, intentional acts on the part of the defendant to disrupt the relationship, actual disruption of the relationship, and damages to the plaintiff caused by those acts. *Compare Della Penna*, 902 P.2d at 748 (citing *Buckaloo v.*

*Johnson*, 537 P.2d 865, 872 (Cal. Ct. App. 1975))[6] *with Cudd*, 122 Wis. 2d at 659-60, 364 N.W.2d at 160, *and* RESTATEMENT (SECOND) OF TORTS § 766B.

Plaintiffs' theory expressed in their brief is that they had prospective and existing contractual relationships with the tour operators consisting of the plaintiffs' purchases and prospective purchases of tickets as part of travel packages for the Rose Bowl game. The theory continues as follows: UCLA knew of the existence of the demand for tickets by Wisconsin fans and the shortage of those tickets; UCLA "engaged in intentional acts to disrupt the purchase of tickets by Wisconsin fans as part of the travel packages by disrupting the market for tickets"; plaintiffs' relationships with tour operators were disrupted; and damages resulted to the plaintiffs.

However, the closest the complaint comes to alleging an intentional interference by UCLA with a contractual or prospective contractual relationship between the plaintiffs and tour operators is the following:

> The reason that [Rose Bowl] tickets were unavailable to the class was that substantial numbers of tickets were placed in the hands of scalpers who inflated the ticket prices to the extent that the tours were unable to purchase tickets at the price previously represented to the tour operators and thus prevented the operators from providing the tickets to the Class as represented.

---

[6] In *Della Penna v. Toyota Motor Sales, U.S.A. Inc.*, 902 P.2d 740, 750 (Cal. 1995), the California Supreme Court held that plaintiffs must also prove that defendant's interference was wrongful. The difference between California and Wisconsin law in this regard is not critical to our analysis.

The complaint alleges that UCLA was "directly responsible for placing the tickets in the hands of scalpers" by described action. Nothing in the complaint, however, alleges that UCLA took those actions for the purpose of interfering with contracts between the plaintiffs and the tour operators.

[23]

We conclude the complaint fails to state a claim for interference in plaintiffs' contractual relations with the tour operators.

## VIII. CONCLUSION

Because we conclude that the complaint fails to state a claim, we affirm. UCLA has moved for costs and attorney's fees under RULE 809.25(3), STATS., on the grounds that this appeal is frivolous. We deny the motion.

*By the Court.*—Order affirmed.

SUNDBY, J. (*dissenting*). University of Wisconsin football fans are among the most dedicated in the country. There was a rumor that when they arrived in Pasadena and were denied admission to the Rose Bowl, there was strong sentiment to storm the "Bastille." We now deny them redress against the culpable party, UCLA. We say that UCLA owed no duty to the University of Wisconsin and Badger fans to live up to its commitment under the agreement between the Big Ten Conference and the PAC-10 Conference. We say the contract may not be enforced for their benefit. I disagree and dissent.

The "fans" make a good point: If not them, then who? The Big Ten could sue UCLA for breach of the contract. But what would be its damages? The parties

damaged would be the fans who lost access to the tickets which should have been allocated to Wisconsin but were allocated by UCLA to others to further ends having nothing to do with the sporting event. For example, UCLA "sold" 4,000 tickets to a deep-pockets donor and 1,233 tickets to persons on condition that they buy UCLA 1994 season tickets. These shenanigans denied Wisconsin fans an opportunity to purchase tickets or obtain the tickets they believed they had purchased.

California law governs the contract issue. Section 1559 of the California Civil Code provides: "WHEN CONTRACT FOR BENEFIT OF THIRD PERSON MAY BE ENFORCED. A contract, made *expressly* for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." (Emphasis added.) Corbin says:

> There is a code provision in California and some other western states that a third person may enforce a contract if it was "made expressly for his benefit." This provision should not be held to require "express" words, either written or oral, that the promisee is motivated by a desire to confer a benefit upon the third person. The code provision is merely a provision attempting to express the modern common law empowering contractors to confer rights on third persons. It does not exclude creditor beneficiaries or attempt to state a formal line of distinction between intended beneficiaries and incidental ones.

4 CORBIN ON CONTRACTS § 776, at 23-24 (1951).

Applying an identical provision in North Dakota law, the federal district court, citing Corbin, stated: "[T]he North Dakota decisions construing the statute have done so resorting to the traditional formula, i.e., determining whether one is an intended beneficiary

who can sue on the contract as opposed to an incidental beneficiary who may not." *United States v. Dairyland Ins. Co.*, 513 F. Supp. 1017, 1018 (D.N.D. 1981), *rev'd on other grounds*, 674 F.2d 750 (8th Cir. 1982). The court further stated:

> The primary test in determining whether a party may sue as a third-party beneficiary is the "intent to benefit" test. If in reading the contract in light of all the surrounding circumstances, an intent to benefit a third party is shown, the beneficiary is an intended beneficiary. If no such intent to benefit is shown, the asserted beneficiary is merely an incidental beneficiary and cannot enforce the contract.

*Id.* at 1018-19 (citations omitted).

Corbin is cited in *Permian Basin Investment Corp. v. Lloyd*, 312 P.2d 533, 537 (N.M. 1957), where the court stated:

> The principle upon which intervenors must be denied recovery is implicit in Corbin's general statement and in all of the third party beneficiary decisions which have been rendered by this court; that the promisor should not be held liable in damages for breach of his contract with the promisee by one whose detriment by its nonperformance could not reasonably have been foreseen by the promisor and by one whose existence (whether specific or general) and interest in the contracted-for performance (whether contingent or direct) was not within the reasonable contemplation of the promisor when the promise was made.

UCLA appears to argue that the California statute requires that it be stated in the contract that the contract is made "expressly" to benefit a third party. However, in *Lucas v. Hamm*, 364 P.2d 685 (Cal. 1961),

*cert. denied,* 368 U.S. 987 (1962), Corbin says that the court held as follows:

> It is not necessary for the contract to contain any express words describing the third party as a beneficiary. The language of prior cases seeming to make such a requirement is called "unfortunate." The court said: "Insofar as intent to benefit a third person is important in determining his right to bring an action under a contract, it is sufficient that the promisor must have understood that the promisee had such intent."

4 CORBIN ON CONTRACTS § 776 n.27, at 30 (Supp. 1996) (quoting *Lucas,* 364 P.2d at 689).

An article in the California Law Review states:

> . . . [I]t may be mentioned that the word "expressly" in Civil Code section 1559 does not require the beneficiary to be designated by name; it is sufficient that he be a member of a class to whom performance is to be rendered. Nor is it even essential that the beneficiary be in existence when the contract is made. It is also immaterial that the promise calls for performance to the promisee himself as well as to his creditors. It would appear to be a question of construction only whether the contract calls for performance to the alleged beneficiary and that the word "expressly" was intended simply to negative "incidently."

Stephen I. Langmaid, *Contracts for the Benefit of Third Persons in California,* 27 CAL. L. REV. 497, 510-11 (1939) (footnotes omitted).

When I went into oral argument, I was persuaded by the argument that California's statute required an "express" declaration of intent of the parties to benefit a third person. Clearly, that is incorrect, so we are back to analyzing whether prospective fans and ticket pur-

chasers are third-party beneficiaries of the contract between the two conferences and the management committee. I conclude that they are.

Another issue in this case which we have not reached is whether plaintiffs can maintain a cause of action against UCLA or must first resort to arbitration. This issue was raised at oral argument but has not been briefed. The Big Ten/PAC-10 contract requires arbitration. The law is so well established that a contract which requires arbitration must be honored that a request for additional briefing would be a waste of judicial resources. The cases seem to be unanimous in holding that a third-party beneficiary is subject to the same terms of the contract as the promisee. *See, e.g., Mayflower Ins. Co. v. Pellegrino*, 261 Cal. Rptr. 224, 226-27 (Ct. App. 1989); *Harris v. Superior Court*, 233 Cal. Rptr. 186, 188 (Ct. App. 1986); *Raffa Assocs., Inc. v. Boca Raton Resort & Club*, 616 So. 2d 1096, 1097 (Fla. Dist. Ct. App. 1993); *Zac Smith & Co. v. Moonspinner Condominium Ass'n*, 472 So. 2d 1324, 1324-25 (Fla. Dist. Ct. App. 1985); *District Moving & Storage Co. v. Gardiner & Gardiner, Inc.*, 492 A.2d 319, 322-23 (Md. Ct. Spec. App. 1985), *aff'd*, 508 A.2d 487 (Md. 1986).