Walter K. WOOD and Elaine J. Wood, Plaintiffs-Appellants, and Cross-Respondents,

v.

Peter A. MILIN, Defendant,

Gene KING and James Minesal, Defendants-Respondents and Cross-Appellants.

Supreme Court

*No. 85–0349. Argued November 24, 1986.—Decided December 22, 1986.*

(Also reported in 397 N.W.2d 479.)

For the plaintiffs-appellants and cross-respondents there were briefs by *Kenan J. Kersten*, Milwaukee, *Kersten & McKinnon*, Milwaukee, *Louis R. Ullenberg*, Milwaukee, of counsel, and oral argument by *Kenan J. Kersten*.

For the defendants-respondents and cross-appellants there was a brief and oral argument by *Patrick F. Brown*, Mukwonago.

BABLITCH, J. Walter and Elaine Wood (the Woods) are owners in joint tenancy of a house in the Town of Vernon. They appeal a judgment of the circuit court for Waukesha county which reduced a jury award in their favor from $60,183.02 to $25,000.00 for damages they sustained when their house partially collapsed. The primary issue is whether sec. 893.80(3), Stats. 1979, provides separate statutory liability of $25,000 to each of the joint tenant owners of a house damaged by the negligence of a municipal building inspector.

Because the Woods have each suffered damages due to the negligent acts of the municipal building inspector, we conclude that sec. 893.80(3), Stats. 1979, allows each to recover separately up to the $25,000 limit. We further adhere to our decision in *Coffey v. Milwaukee*, 74 Wis.

2d 526, 532-40, 247 N.W. 2d 132 (1976) which rejected the "public duty," "special duty" distinction and thus recognized the liability of municipal building inspectors to individuals for damages caused by their negligence.

The issues in this case arise from the following facts. After purchasing their home in 1977 the Woods discovered serious structural and plumbing defects. Following partial collapse of their residence due to these structural defects the Woods sued the builder, Peter A. Milin (Milin) and the building and plumbing inspector of the Town of Vernon, Merlin King for negligence.[1] Testimony in the record indicates that when the wood frame of the house was originally completed in June, 1971, Merlin King observed that the rafters and floor joists had not been constructed in accordance with building code requirements. After the house was completed he failed to conduct a final building and plumbing inspection as was required by the building code. Merlin King also acknowledged he did not issue an occupancy permit for the house certifying that no code violations existed, as was required by law.

At trial the court received expert testimony that the construction and location of the joists supporting the main floor were defective and in violation of the building code. Experts also testified that these defects existed at the time of original construction and were the cause of the partial collapse of the house. Further testimony

---

[1] At the time the house was constructed and when this action was commenced, Merlin King, the original named defendant, was both building and plumbing inspector for the Town of Vernon. Before trial, Merlin King died and the defendants Gene King (King) and James Minesal (Minesal), the town's present building and plumbing inspectors, respectively, were substituted as defendants for Merlin King.

indicated that the plumbing problems experienced by the Woods were the result of plumbing code violations which also existed at the time of original construction.

After trial the jury found that the building and plumbing inspector, Merlin King, was negligent in performance of his inspecting and permit issuance duties during and after construction of the Wood's home and that the negligence was a cause of the damage to the house. The jury also found the builder Milin negligent in the original construction of the Wood's home and found that the Woods were not negligent in their investigation of the condition of their home prior to purchasing it. The jury awarded the Woods $60,183.02 and apportioned 90 percent of the negligence to Merlin King, the Town of Vernon inspector, and 10 percent to Milin, the builder.

The circuit court modified the jury's verdict by reducing the damages awarded the Woods from $60,183.02 to $25,000.00, the statutory municipal liability limit prescribed by sec. 893.80(3), Stats. 1979. The circuit court reasoned that because only a single cause of action, damage to real estate, was involved, the two plaintiffs could not individually avail themselves of the statutory municipal liability limit of $25,000 set forth in sec. 893.80(3).

We first resolve the primary issue presented in this appeal: how the municipal liability limits of sec. 893.80(3), Stats., operate when joint tenant property owners suffer damages due to the negligent acts of municipal building inspectors. Interpretation of this statute is a question of law which this court may review without deference to the trial court. *Bingenheimer v. DHSS*, 129 Wis. 2d 100, 106, 383 N.W. 2d 898 (1986).

The second issue raised by the court of appeals in its certification request is whether the rule of municipal inspector liability articulated in *Coffey*, 74 Wis. 2d at 526, remains valid. This is also a question of law which we consider without deference to the trial court.

I. Construction of Sec. 893.80(3), Stats. 1979.

Section 893.80(3), Stats. 1979,[2] limits the amount of damages recoverable from government subdivisions in tort actions. The statute provides in pertinent part:

> "The amount recoverable by any person for any damages, injuries or death in any action founded on tort against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof and against their officers, officials, agents or employes for acts done in their official capacity or in the course of their agency or employment, whether proceeded against jointly or severally, shall not exceed $25,000."

The parties in this action offer substantially different interpretations of how this statute should be applied to joint tenant owners of property. King and Minesal begin with the assumption that husband and wife joint tenants, whose property has been damaged, "are in legal contemplation one person asserting one claim or cause of action." Having characterized the two owners as "one person" having but "one claim," they conclude that the "any person" language of sec. 893.80(3) permits only a single $25,000 recovery.

Conversely, the Woods focus on the fact that they are separate persons, each with a distinct interest in the

---

[2] This section was amended by ch. 63, laws of 1981 to increase the $25,000 liability limit to $50,000. The increase was effective February 1, 1982.

property. Therefore they argue that they are each a "person" with damages founded on tort under sec. 893.80(3), Stats., and are therefore entitled to recover separately up to the statutory limit.

■

The statute provides that "any person" may recover for damages for any action founded on tort against any governmental subdivision or their employees. In this case, Elaine Wood and Walter Wood each own an equal interest in their home. This is based on sec. 700.17(2), Stats., which provides: "Each of 2 or more joint tenants has an equal interest in the whole property for the duration of the tenancy, irrespective of unequal contributions at its creation." Furthermore, in Wisconsin owners of property in joint tenancy each enjoy numerous incidents of ownership. Joint tenants have the right to sell their individual interests and thereby sever the joint tenancy. *Nelson v. Albrechtson*, 93 Wis. 2d 552, 563, 287 N.W. 2d 811 (1980). Each is entitled to an equal share of rental income and profits from the property. *See* sec. 700.23. A joint tenant may mortgage his or her interest in the property. *See* sec. 700.24.

■

These characteristics of joint tenancy lead us to conclude that Elaine and Walter Wood indeed have separate though related interests in the property. Their respective interests were damaged by the negligence of the Town of Vernon plumbing and building inspector. Essentially each has a cause of action for damages because the real interests of each have been damaged. The fact that Elaine and Walter Wood joined their claims in prosecuting this suit in no way affects the fact that they each have an interest which has been damaged. *Cf. Gleason v. City of Oklahoma City*, 666 P. 2d

786, 789 (Okl. App. 1983) (joinder of claims in wrongful death action brought by administratrix of estate did not deprive each claimant who suffered loss of right to recover up to the statutory liability limit). Elaine and Walter Wood each qualify as a "person" who has suffered "damages . . . in any action founded on tort . . . " as required by sec. 893.80(3). Therefore each is entitled to recover up to the $25,000 limit.

This conclusion is in accord with the court's prior interpretation of sec. 893.80(3), Stats., set forth in *Schwartz v. Milwaukee*, 54 Wis. 2d 286, 195 N.W. 2d 480 (1972). In *Schwartz*, the court held that sec. 895.43(2), currently sec. 893.80(3), did not limit a husband's claim for loss of consortium and medical expenses despite the fact that the wife's claim of damages had exhausted the $25,000 limit. In *Schwartz* the court applied the "$25,000 limitation to each person asserting a cause of action for damages regardless of whether the cause of action is separate and independent or separate but derivative. . . . " *Id.* at 295. It is clear from this passage that separateness of the causes of action for damages was key to the court's interpretation of the statute. As previously discussed, Elaine and Walter Wood each have a distinct and separate interest in the property which has been damaged by the negligent acts of the municipal plumbing and building inspector. Thus, the separateness in causes of action required by *Schwartz* before separate limits are allowed under sec. 893.80(3), Stats., is present in this case.

We note that our holding comports with the decision of the only other state supreme court to have considered whether joint tenants of property may each recover up to the maximum limit established by a governmental liability statute. *See City of Colorado Springs*

*v. Gladin,* 599 P. 2d 907 (Colo. 1979). In *Gladin* a husband and wife were co-owners of property damaged by the city. The Gladins were awarded a total of $110,000 and the city appealed claiming that the maximum liability of the city under the applicable statute to both was $100,000 because the Gladin's damage was confined to a single tract of property. The applicable statute provided as follows:

> "Limitations on judgments. (1) The maximum amount that may be recovered under this article shall be:
>
> "(a) For any injury to one person in any single occurrence, the sum of one hundred thousand dollars;
>
> "(b) For an injury to two or more persons in any single occurrence, the sum of three hundred thousand dollars; except in such instance, no person may recover in excess of one hundred thousand dollars." Colorado Rev. Stats. sec. 24–10–114(1)(a) and (b) 1973.

The court rejected the city's reasoning, stating:

> "On the contrary, each of the Gladins owned an undivided *one-half interest in the property and each was injured.* An analogous situation would be if each of them owned the entire interest in one-half of the property. Therefore, subsection (1)(b), not (1)(a), applies. The limitation is $300,000 with the further limitation of $100,000 per injured person. Thus, where two persons own property which is damaged, the total statutory limitation on the amount recoverable is $200,000." *Gladin,* 599 P. 2d at 908. (Emphasis added.)

Similarly we reject the argument of the Town of Vernon plumbing and building inspectors that husband

286

and wife joint tenants are in effect one person asserting but one claim or cause of action. As long as the interest of each has been damaged, each has a cause of action founded on tort against the municipal building and plumbing inspectors. Thus, the statute provides a separate recovery up to the $25,000 limit for each.

## II. The Validity Of The Rule Of Municipal Building Inspector Liability.

Having resolved the primary issue certified in this appeal we now turn to the second question the court of appeals recommended for review: the continuing validity of the rule of municipal building inspector liability announced in *Coffey*, 74 Wis. 2d at 526.

In *Coffey*, this court thoroughly considered whether municipal building inspectors can be held liable to individual members of the public for damages caused by negligent inspection. In that case the City of Milwaukee argued "that the duties imposed on the building inspector by the applicable statutes . . . are clearly duties owed to the public in general and not to the specific plaintiff in this case" and that "there can be no liability on the part of a municipality for the breach of such a 'public duty.' " *Id.* at 535. This proposition is commonly referred to as the "public duty doctrine." We rejected the argument in *Coffey* because we concluded it was inconsistent with the state's law of municipal liability for torts as expressed *Holytz v. Milwaukee*, 17 Wis. 2d 26, 115, N.W. 2d 618 (1962) and later codified in secs. 893.80 and 893.82, Stats. The "public duty doctrine" also conflicts with the concept of legal duty as defined and applied by this court in prior cases. *E.g.*, *Antoniewicz v. Reszczynski*, 70 Wis. 2d 836, 857, 236 N.W. 2d 1 (1975).

We adhere to the position announced in *Coffey* that "[a]ny duty owed to the public generally is a duty owed to individual members of the public." *Coffey*, 74 Wis. 2d at 540. The "public duty" —"special duty" distinction, rejected in *Coffey*, which King and Minesal ask us to resurrect essentially provides that "a duty to all is a duty to none." Annotation, *Modern Status of Rule Excusing Governmental Unit From Tort Liability On Theory That Only General, Not Particular, Duty Was Owed Under Circumstances*, 38 A.L.R. 4th 1194, 1196 (1985). As we stated in *Coffey*, the well established tort law of this state does not permit adoption of this artificial distinction. *See Coffey*, 74 Wis. 2d at 540.

We further stated, that an individual damaged due to the negligence of a municipal building inspector need not demonstrate that the inspector owed him or her a "special duty" as a prerequisite to liability. Rather, whether a duty exists depends on whether the building inspector could have foreseen that negligence in performing his required duties "might have foreseeably resulted in harm to someone." *Id.* As in all other negligence cases, foreseeability is critical in determining whether a duty exists. *E.g., A.E. Investment Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 483–84, 214 N.W. 2d 764 (1974).

We note that other courts since *Coffey* have also rejected the "public duty" —"special duty" distinction in the area of municipal tort liability. *Stewart v. Schmieder*, 386 So. 2d 1351 (La. 1980) ("[M]ere fact that a duty is of a public nature, and benefits the general public, does not require a conclusion that the city cannot be found liable for the breach of that duty." *Id.* at 1358); *Brennan v. City of Eugene*, 591 P. 2d 719 (Or.

288

1979) (scope of duty owed is governed by concept of foreseeability; "public" versus "private duty" distinction is not applicable in light of abrogation of doctrine of sovereign immunity); *Brown v. Syson*, 663 P. 2d 251 (Ariz. App. 1983) (city building inspector liable to home purchasers for damages caused by negligent inspection; "public duty" —"special duty" distinction rejected); *Martinez v. City of Lakewood*, 655 P. 2d 1388 (Colo. App. 1982) (court rejects "public duty" —"special duty" distinction; city had a duty to use reasonable care in maintaining traffic signs to protect foreseeable plaintiffs). Even those courts that purport to recognize the "public duty doctrine" have recognized a variety of exceptions or strained to find a "special duty" running from the municipality to the injured party in order to hold the municipality liable. *E.g., Butler v. Bogdanovich*, 705 P. 2d 662 (Nev. 1985); *Lorshbough v. Township of Buzzle*, 258 N.W. 2d 96 (Minn. 1977).

The potential of increased governmental liability did not dissuade us from recognizing municipal building inspector liability in *Coffey*. While we appreciate that the government cannot be an insurer of all dangers which may arise from the conduct of government, we believe there are sufficient safeguards to prevent this result. For example, sec. 893.80(3), Stats., imposes monetary limits on municipal liability and in every instance the risk created by the activity must fall within the zone of foreseeability applicable in all tort actions. In addition, we emphasize that in a certain number of cases liability may not attach because of the application of the judicial policy considerations set forth in *Coffey*, 74 Wis. 2d at 541.

We decline to consider King and Minesal's alternative argument that they should not be held liable in this

case based on several of the judicial policy considerations stated in *Coffey*. *Id.* at 54–43. King and Minesal raised the issue of the validity of municipal building inspector liability at the trial court, but failed to raise the issue of non-liability based on the judicial policy considerations articulated in *Coffey*. They first raised this latter issue on appeal. It is true that we may in a proper case consider new issues for the first time on appeal. *E.g., Terpstra v. Soiltest, Inc.,* 63 Wis. 2d 585, 593, 218 N.W. 2d 129 (1974). But this is the exception and not the rule. In failing to raise the issue below, King and Minesal deprived the Woods and the trial court of the opportunity to fully address the judicial policy arguments now raised. *Id.* at 593–94. We will not exercise our discretion to consider these arguments.

*By the Court.*—The decision of the circuit court is modified, and, as modified, affirmed.