William V. CATONE

v.

Edward E. MEDBERRY, Jr., et al.

No. 87–542–Appeal.

Supreme Court of Rhode Island.

March 6, 1989.

R. Daniel Prentiss, Providence, for plaintiff.

Stephen B. Lang, Higgins, Cavanagh & Cooney, Providence, Fred J. Volpe, Mosca & Volpe, North Kingstown, Paul A. Anderson, Anderson, Anderson & Zangari, Providence, James P. Flynn, North Kingstown, John LP Breguet, Dept. of MHRH, Richard B. Wooley, Asst. Atty. Gen., for defendants.

## OPINION

MURRAY, Justice.

This civil action arises out of a fatal collision between an automobile driven by the plaintiff's decedent and a vehicle owned and vicariously operated by the State of Rhode Island. The plaintiff's wife died when an automobile she was operating collided with a state-owned truck. The plaintiff, William V. Catone, in his capacity as administrator of the estate of Fely C. Catone and as parent and best friend of Keith C. Catone, appeals the decision of the Superior Court granting summary judgment in favor of Edward E. Medberry, Jr. (Medberry), an employee of the Rhode Island Department of Transportation; W. Edward Wood, then director of the Department of Transportation; and the State of Rhode Island. We reverse.

The facts germane to this appeal are not in dispute. On the morning of June 5, 1981, Medberry was the driver of a state-owned dump truck assigned to a litter-cleanup detail on Route 4 in East Greenwich, Rhode Island. Medberry's task apparently necessitated driving the truck slowly, or stopping it completely, near or partially on the high-speed lane of the highway while other state employees collected trash from the median strip. During the course of the cleanup plaintiff's wife, Fely C. Catone, was traveling northbound along Route 4 in her automobile. When she encountered a bus moving slowly in the center lane of the highway, Mrs. Catone maneuvered her car into the high-speed lane in an effort to accelerate past the vehicle and then collided with the state's dump truck. She died as a result of injuries sustained in the collision.

The plaintiff brought suit under the Wrongful Death Act, G.L.1956 (1985 Reenactment) chapter 7 of title 10, claiming among other things that the State of Rhode Island, by and through its employees, negligently caused his wife's death. The defendants moved for summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure on the grounds that they were immune from suit under the "public duty doctrine." The motion justice, relying on our holding in *Knudsen v. Hall*, 490 A.2d 976 (R.I.1985), found as a matter of law that defendants owed no duty to Mrs. Catone in her individual capacity at the time of the accident and granted defendant's motion. Final judgment was entered on December 15, 1987, under Rule 54(b). The issue before this court is whether the public duty doctrine operates in these circumstances to bar plaintiff's claim as a matter of law. We shall begin our discussion with an overview of the relevant principles of law.

■ Under a traditional application of governmental immunity, individuals tortiously injured by an agent of the state or one of its subordinate political bodies are barred from recovery absent express statutory consent to suit or a constitutional waiver of immunity. See W. Prosser & W. Keeton, *The Law of Torts*, § 131 at 1032 (5th ed.1984). The rationale for this rule stems from a common-law theory thoroughly rejected by the American people under King George III, namely, that "The King Can Do No Wrong." Since 1957 the overwhelming majority of jurisdictions have either limited or repudiated the doctrine of sovereign immunity by court decision or legislative fiat. *See, e.g., Vanderpool v. State*, 672 P.2d 1153 (Okla.1983); *Pruett v. City of Rosedale*, 421 So.2d 1046 (Miss.1982); *Hargrove v. Town of Cocoa Beach*, 96 So.2d 130 (Fla.1957); *see* Mass. Gen. Laws Ann. ch. 258, § 2 (West 1988). *See generally* Restatement (Second) *Torts* §§ 895B, 895C app. (1982) (compilation of each state's position on state and local immunity). Consistent with this trend, this court in *Becker v. Beaudoin*, 106 R.I. 562, 261 A.2d 896 (1970), abolished the common-law immunity conferred upon municipal and quasi-municipal corporations. Following the *Becker* decision, the General Assembly enacted the Rhode Island Tort Claims Act, G.L.1956 (1985 Reenactment) chapter 31 of title 9. The act permits individuals to sue governmental units in the same manner as private individuals for injuries caused by the negligence of state or local employees. Section 9–31–1. Under the Tort Claims Act, money damages are generally limited to $100,000. Sections 9–31–2 and 9–31–3. We note, however, that this waiver of immunity by itself does not establish a cause of action in tort against governmental entities.

■ Under the prevailing public duty rule, private plaintiffs must show that the governmental body or its agent breached a special duty of care owed to them in their individual capacities. *See South v. Maryland*, 59 U.S. (18 How.) 396, 15 L.Ed. 433 (1855). Where the duty is a general one owed to the entire public, most courts prohibit individuals from recovering for injuries caused by the tortious conduct of governmental employees. To recover against the government, therefore, the facts of the case ordinarily must establish a "special relationship" between the plaintiff-victim and the state or its agent. It is the existence of this special relationship that trig-

gers a duty of care and establishes the basis for potential liability. If the state breaches this obligation and this breach in turn causes harm to a particular individual or member of an identifiable class, then liability will attach.

In recent years an increasing minority of states have rejected or limited the application of the public duty doctrine as an attempt to resurrect the ghost of sovereign immunity. *Division of Corrections v. Neakok*, 721 P.2d 1121 (Alaska 1986); *Ryan v. State*, 134 Ariz. 308, 656 P.2d 597 (1982); *Leake v. Cain*, 720 P.2d 152 (Colo. 1986); *Commercial Carrier Corp. v. Indian River County*, 371 So.2d 1010 (Fla. 1979); *Wilson v. Nepstad*, 282 N.W.2d 664 (Iowa 1979); *Stewart v. Schmieder*, 386 So.2d 1351 (La.1980); *Irwin v. Town of Ware*, 392 Mass. 745, 467 N.E.2d 1292 (1984); *Maple v. Omaha*, 222 Neb. 293, 384 N.W.2d 254 (1986); *Schear v. Board of County Commissioners*, 101 N.M. 671, 687 P.2d 728 (1984); *Brennen v. City of Eugene*, 285 Or. 401, 591 P.2d 719 (1979); *Wood v. Milin*, 134 Wis.2d 279, 397 N.W.2d 479 (1986); *see also* 5 F. Harper, F. James, Jr. & O. Gray, *The Law of Torts* § 29 (2d ed.1986).[1] Nevertheless, the majority of states that have abolished sovereign immunity continue to require the existence of a special relationship as a prerequisite to the government's liability in tort. *See* Note, *Governmental Tort Liability: A New Limitation on the Public Duty Rule in Massachusetts?*, 19 Suffolk U.L. Rev. 667, 668 (1985). This court has steadfastly maintained that "[i]n suits brought against the state, plaintiffs must show a breach of some duty owed them in their individual capacities and not merely a breach of some obligation owed the general public." *Ryan v. State Department of Transportation*, 420 A.2d 841, 843 (R.I.1980). Since the *Ryan* decision we have repeatedly rejected claims of negligence brought against political bodies. *See Kowalski v. Campbell*, 520 A.2d 973 (R.I.1987) (no cause of action against state for negligently maintaining highway safety lines); *Barratt v. Burlingham*, 492 A.2d 1219 (R.I.1985) (no liability

for police officer's negligent failure to remove intoxicated driver from road); *Knudsen v. Hall*, 490 A.2d 976 (R.I.1985) (state not liable to motoring public in general for negligent maintenance of highway intersection); *Orzechowski v. State*, 485 A.2d 545 (R.I.1984) (parole board not liable for negligently paroling prisoner who injured member of general public); *see also Saunders v. State*, 446 A.2d 748 (R.I.1982) (prison employees must have objective knowledge that violent prisoner would murder particular inmate before holding state liable). In each of these cases, the claimants failed to establish the existence of a special duty of care owed them by the state as specific identifiable individuals or members of a particular class.

We have allowed suit against governmental entities on two occasions. *See Calhoun v. City of Providence*, 120 R.I. 619, 390 A.2d 350 (1978) (clerk's negligent failure to record order recalling outstanding capias resulted in wrongful arrest of specific identifiable individual under circumstances where clerk was not clothed with judicial immunity); *Becker v. Beaudoin*, 106 R.I. 562, 261 A.2d 896 (1970) (police placed prisoner with known suicidal tendencies in cell containing blanket which he later used to hang himself). In both of these situations, "either the plaintiffs have had prior contact with state or municipal officials who then knowingly embarked on a course of conduct that endangered the plaintiffs, or they have otherwise specifically come within the knowledge of the officials so that the injury to that particularly identified plaintiff can be or should have been foreseen." *Knudsen v. Hall*, 490 A.2d at 978. It is against this backdrop that we turn to the case at bar.

The instant case places squarely in issue the viability of the public duty doctrine and impels us to examine the extent of its application. The plaintiff claims that the motion justice misapplied the public duty doctrine and, by doing so, excused the state from a duty imposed upon every indi-

---

**1.** Critics of the rule have restated it cynically as a "duty owed to everyone is [a duty] owed to no one." Lambert, *Governmental Immunity and* *Liability—Police Liability for Negligent Failure to Prevent Crime*, 27 ATLA L. Rep. 386, 387 (Nov. 1984).

vidual at common law to exercise reasonable care when operating a motor vehicle. The plaintiff further argues that the underlying policy considerations that led to the adoption of the public duty doctrine are not advanced by extending its application to bar recovery in these circumstances. We agree.

We garner support for our conclusion from an examination of the liability of the United States under the Federal Tort Claims Act. Although not identical to the Rhode Island statute, the language of the Federal Tort Claims Act is sufficiently similar to warrant attention. 28 U.S.C.A. § 1346 (West 1976) and 28 U.S.C.A. §§ 2671–78, 2680 (West 1965). That act establishes that "[t]he United States shall be liable * * * in the same manner and to the same extent as a private individual under like circumstances * * *." 28 U.S.C.A. § 2674. The federal statute also contains thirteen express exceptions under which the government's acts are free from liability. 28 U.S.C.A. § 2680.[2]

The legislative and judicial branches of the federal government have addressed, at least tangentially, the liability of the United States under the Federal Tort Claims Act for injuries arising out of the negligent operation of government vehicles. In *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), the United States Supreme Court examined the extent of the government's liability under this congressional waiver of blanket governmental immunity. The Court first considered the tort liability of the United States prior to the creation of the act. The *Dalehite* Court noted:

"When the Government took over the operation of the *railroads* during the First World War, Congress made the United States subject to the same responsibility for property damage, personal injury, and death as the private owners would have been. In 1920 and 1925, the Government consented to suits in the district courts upon admiralty and maritime torts involving governmental *vessels*, without limitation as to amount. * * * Yet a large and highly important area remained in which no satisfactory remedy had been provided for the wrongs of governmental officers or employees, the ordinary 'common law' type of tort, such as personal injury or property damage caused by the negligent operation of an *automobile*." (Emphasis added.) *Id.* at 25–26 n.10, 73 S.Ct. at 963 n.10, 97 L.Ed. at 1435 n.10.

The Court then cited numerous congressional-committee reports in support of holding the United States liable under the act for physical and economic harm resulting from the negligent operation of official vehicles. *Id.* at 28, 73 S.Ct. at 964, 97 L.Ed. at 1437. In light of the legislative history of the act, the majority of the *Dalehite* Court concluded that Congress had consented to suit in ordinary common-law torts. Indeed, the Court later went on to specify, "We know that the draftsmen did not intend to relieve the Government from liability for such common-law torts as an automobile collision caused by the negligence of an employee * * *." *Id.* at 34, 73 S.Ct. at 967, 97 L.Ed. at 1440. Although Rhode Island has no recorded legislative history to assist in ascertaining legislative intent, we similarly believe that our General Assembly intended the state to be liable in this same manner.

The state argues that by virtue of assisting in the maintenance and beautification

---

**2.** Among the exceptions contained in 28 U.S.C.A. § 2680 (West 1965) are the following:
"(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a *federal agency or an employee* of the Government, whether or not the discretion involved be abused.

" * * *
"(c) Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer.
" * * *
"(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

of public highways, it was engaged in a "governmental function" and therefore entitled to protection under the public duty doctrine. We disagree. Perhaps the best encapsulation of our sentiments concerning the governmental-proprietary standard was articulated by Justice Lavendar of the Oklahoma Supreme Court when he stated "Judicial attempts to grapple with what has become a multi-addered medusa has resulted in confusion and uncertainty all too painfully apparent to legal scholars, and an inability on the part of the courts to evolve any definitive guidelines * * *." *Vanderpool v. State*, 672 P.2d at 1154–55. This court abolished the distinction between governmental and proprietary functions in *Becker, supra*, and we refuse to breathe new life into this doctrinal source of confusion. Furthermore, we note that plaintiff is suing the state not for negligently cleaning the highway in violation of a statutory grant of authority but for negligence in the operation of a motor vehicle under the common law.

◼ Nor do we agree with the state's assertion at oral argument that this court must overrule ten years of precedent in order to find the government liable in these circumstances. *Ryan* and its progeny, properly understood, has its boundaries. Under the Rhode Island Tort Claims Act the state is liable in tort "in the same manner as a private individual or corporation." In every case in which we have applied the public duty doctrine, the government or its agent was engaged in an activity inherently incapable of being performed by private individuals. In these situations, the state acts for the summum bonum of society and "we decline to hold them liable for the consequences of performance of those functions in the absence of a duty to a specific person or class of persons." *Orzechowski v. State*, 485 A.2d at 549. When governmental employees engage in activities normally undertaken by private individuals, however, there is no need to cloak them in the protection of the public duty doctrine. In these instances, the doctrine will not apply.

◼ The primary purpose of the public duty doctrine is to encourage the effective administration of governmental operations by removing the threat of potential litigation. This need to protect the government's ability to perform certain functions is particularly relevant when the activity in question involves a high degree of discretion such as governmental planning or political decision making. The state would be unable to function if liability was imposed each time an individual was deleteriously affected by such activities. We shall therefore continue to immunize the government for harm resulting from discretionary acts.

◼ Neither the need to alleviate the threat of litigation for effective governing nor an activity inherently sovereign in nature is present in the case at bar. This suit is a classic common-law negligence action involving the operation of motor vehicles— an activity common to the majority of Americans. We can think of no conceivable public-policy consideration which would be furthered by liberating state-employee drivers from adherence to the rules of the road. If we were to bar suit in the instant case under the public duty doctrine, the pragmatic effect of our decision would be to excuse governmental employees and their employers for the careless and callous operation of motor vehicles and leave hapless victims virtually remediless.[3] Such a result would fly in the face of the express language of the Tort Claims Act. The primary purpose of the act is to provide effective relief for persons injured as a result of governmental negligence. No reasonable basis exists for applying the public duty doctrine to situations in which the government acts in a manner similar to a private individual or corporation. In these circumstances, we believe that the Rhode Island

---

**3.** The motion justice concluded that Medberry was acting within the scope of his employment at the time of the accident and afforded him the same protection given the state under the public duty doctrine. At the time of this appeal, Medberry has a suit pending against Fely Catone's estate for the injuries he sustained in the collision. To preclude one party from asserting a claim while allowing another to bring suit for injuries arising out of a single incident merely because of the status of the defendant is a result this court finds untenable.

Legislature consciously chose to shift the costs of governmental maladministration from innocent victims to the general public via the tax rolls. To immunize the government from liability in this case would effectively smuggle back into law the doctrine of sovereign immunity that § 9-31-1 was designed to constrain.

■■■ We therefore hold that when the government or its agent engages in an activity normally undertaken by private individuals in the course of their everyday lives, a duty arises under the common law to exercise reasonable care in the performance of this task. Governmental employees, like ordinary citizens, must operate their vehicles in a reasonably safe manner and avoid creating foreseeably unreasonable risks of harm to the motoring public. There is no need to establish the existence of a special relationship in these circumstances simply because of the sovereign status of the state. When the government acts in the same manner as a private individual, "the only difference between the State of Rhode Island and other tort defendants is the [monetary] limitation on liability contained in § 9-31-2." *Laird v. Chrysler Corp.*, 460 A.2d 425, 429 (R.I.1983). This cap on damages will ensure that the state is not crippled by excessive judgments. In conclusion, we also cannot agree with the state that our decision today will open the floodgates of litigation against governmental entities. The plaintiff still bears the heavy onus of proving that a duty was owed, that this duty was breached, and that an injury was proximately caused by that breach. If governmental employees exercise reasonable prudence in carrying out tasks common to all persons, minimal litigation should result.

Viewing the matter in a light most favorable to the party opposing the Rule 56 motion, we therefore conclude, without passing judgment on the merits, that the plaintiff has raised a genuine issue of material fact concerning the negligence of state employees and the vicarious liability of the State of Rhode Island.

A similar result has been reached in *O'Brien v. State*, 555 A.2d 334 (R.I.1989).

For the reasons heretofore stated, the appeal of the plaintiff is sustained, the judgment appealed from is reversed, and the case is remanded to the Superior Court for further proceedings in accordance with this opinion.

KELLEHER, J., did not participate.