DECISION
This matter comes before the Court on the motion of the Finance Director of the Town of West Warwick to dismiss the complaint under R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, or, in the alternative, for summary judgment under R. Civ. P. 56 because there is no genuine issue as to the material facts which are dispositive of the plaintiff's claims, so that the defendants are entitled to judgment as a matter of law.
The plaintiff's claims are based on the following allegations, some of which are disputed, and others are not. At the time of the commencement of this action the plaintiff held title to certain land in the Town of Warwick, described as Lots 11, 13 and 20 on a plat entitled "Centerville Park Plat," as recorded in the town's land evidence records in Plat Book 3 at Page 29 and on Plat Card 102, also designated as Lots 146, 147, 160 and 435 on Assessor's Plat 27. The land constitutes approximately 2.5 acres, lying South of State Route 117 (Legris Avenue) between Glen Drive and Atlantic Street. An intermittent stream called Hardig Brook flows in an easterly direction through the land. Sometime in 1985 the town entered the land and channelized Hardig Brook. At that time record title to the land was in John D. Hauser, the plaintiff's father. The town did not have consent from the record owner to enter on the land or to channelize the stream flowing through it.
The alteration of the wetland by the town attracted the attention of the State Department of Environmental Management, which resulted in the recording of a notice of violation from the department in the land evidence records of the town. The town then entered into consent agreements in 1986 and 1987, with the department, to restore the wetland, but it is alleged never to have carried out the agreed restoration.
In his complaint, the plaintiff claims damages under a number of legal theories. Count I asserts that the town has taken some or all of his ownership of the land by eminent domain, for which he is entitled to just compensation. Count II alleges that the plaintiff was deprived of his interest in the land by the town without procedural due process in violation of his constitutional rights, for which he is entitled to damages. Count III asserts that the plaintiff was deprived of his property by the town without substantive due process of law in violation of his constitutional rights. Count IV is a claim of inverse condemnation. Count V sounds in common law trespass quare clausum fregit. Count VI asserts a claim of tortious interference with prospective business advantage. Count VII alleges that the town has been unjustly enriched and Count VIII seeks implied contractual indemnification.
The defendants allege that they are entitled to dismissal or summary judgment on four grounds:
 First, that under the undisputed facts the town had recorded and prescriptive easements to drain surface water onto and across the plaintiff's land, and the town was privileged under that easement to enter the plaintiff's land to maintain the stream. Second, that the plaintiff's claims were barred by the appropriate statute of limitations. Third, that the plaintiff could not maintain his claims of inverse condemnation or eminent domain because he took title in 1991 with knowledge of the town's previous conduct in 1985.
Fourth, that plaintiff's claims are barred by application of the public duty doctrine.
 I. The Defense of Privilege to Maintain an Easement of Drainage
The defendants show, by undisputed and uncontradicted affidavits, that a number of culverts have been installed which collect surface water from public highways and drain that water into Hardig Brook. Some of these culverts also drain surface water onto the plaintiff's land from other nearby developed parcels. It is undisputed that these culverts were all in place prior to 1970, one at least since 1958. Since many of these culverts are shown on recorded plats, the town claims that the easements implied from the culverts which serve to deflect surface water from the town's streets are easements of record. The town further claims that by virtue of the open and long-standing presence of the culverts the town has long since acquired an easement of drainage by prescription.
The plaintiff does not appear to dispute the existence of Hardig Brook. Nor does he contest the existence of the culverts which tend to divert surface water from the town's property into Hardig Brook. Nor does he question that the drainage has continued since prior to 1970, at least for twenty-three years before he commenced this action.
The defendants urge that Greenwood v. Rahill, 412 A.2d 228 (R.I. 1980) is on point. That case holds that a governmental entity, in that case the state, may acquire a drainage easement by prescription. In addition, they argue that the implied easement established by the culverts shown on the record may well also be enjoyed by the town.
The plaintiff counters by pointing that, even if the defendants do enjoy an easement of drainage across his land, the extent of the burden of that easement must be shown by evidence. He further contends that the reasonableness of the town's exercise of its easement is a question of fact to be submitted to a fact-finder. In essence, he argues that, even if the defendants' entry onto his land to maintain the drainage easement was necessary under the undisputed circumstances, the channelization of the stream without the authorization of the Department of Environmental Management was unreasonable and exceeded the scope of the permitted necessary maintenance of the drainage rights. The cease and desist order from the department and the consent agreements executed by the town are strong evidence that the town's exercise of its privilege under the easement may have been excessive and unreasonable, even if necessary. The question of whether or not the exercise of an easement by the dominant tenant was reasonable or not is ordinarily a question of fact to be determined by the trial justice or jury. Sharp v. Silva Realty Corporation, 86 R.I. 276, 285 134 A.2d 131, 136 (1957).
As the plaintiff points out, ordinarily the claim of privilege is an affirmative defense to intentional torts like trespass and interference with prospective economic advantage, as to which the defendant has not only the burden of asserting by an affirmative plea, but, much more important in this case, the burden also of proving that its conduct was necessary and reasonable. The motion may not be granted on these grounds.
 II. The Statute of Limitations
The parties disagree as to which limitation period applies and as to when the period began to run. The plaintiff argues that the ten year period in G.L. 1956 (1997 Reenactment) § 9-1-13 applies, because some of its claims are not tort claims to which § 9-1-25 (three years) would apply. He also argues that his claims did not arise until it was clear in 1993 that the defendants would not carry out the consent agreements of 1986 and 1987 to restore his land to its condition before the town channelized the brook.
The Court must first decide which, if any, of the plaintiff's claims sound in tort, so that § 9-1-25 will apply. The plaintiff's bold assertion of the legal theory under which he claims damages will not control the decision. The question is whether or not the conduct of the defendants, as alleged, wrongfully invaded some right of the plaintiff, which is protected by tort law. Clearly excluded are those rights which arise out of a failure to carry out binding agreements express or implied, and, therefore, sound in contract, not tort.
Easiest of all to classify is the legal theory which the plaintiff labels "trespass" in Count V. Trespass to land is the grandmother of all property torts. Section 9-1-25 must apply.
The eminent domain and inverse condemnation theories in Counts I and IV are a little more difficult to classify. It could be argued that there is an implied agreement between every landowner and the government that the government may take land for a public purpose provided the owner is fairly compensated. In this case, however, the claim is that the government wrongfully took some of the plaintiff's property interests in his land. A wrongful taking is no less a tort because the taker is a government.
Eminent domain does not apply because the town had no statutory authority for its use of plaintiff's land to channelize the brook, although there is some suggestion in the defendants' memorandum that they might be entitled to invoke the defense of necessity. Nor was there an inverse condemnation of a property interest of the plaintiff by the exercise of some land use regulation by the town, which deprived the plaintiff all beneficial economic use of his land. Alegria v. Keeney,687 A.2d 1249, 1252 (R.I. 1997). The essence of the plaintiff's claim is not that the town took his property interests by enforcing a regulatory regime in the pursuit of a legitimate public interest, but that the taking itself was wrongful, because it was not authorized by any regulation or statute. Such a taking would be a trespassory tort, if engaged in by a private individual. It is no less a tort if accomplished by a municipality. Section 9-1-25 applies to both of these claims.
Somewhat more difficult of resolution are the claims under42 U.S.C. § 1983 in Counts II and III for violations of the plaintiff's constitutionally protected civil right to own real property. This Court is satisfied that any difficulty of analysis has been resolved by Walden III, Inc. v. State of Rhode Island, 576 F.2d 945 (1st Cir. 1978), which applied the three year limitation in G.L. § 9-1-14(a) to claims under 42 U.S.C. § 1983 as the most analogous state statute of limitations. The applicable period for these counts is three years.
There remain three ingenious legal theories in Counts VI, VII and VIII, as propounded by the plaintiff. Count VI alleges that the defendants' conduct constituted an intentional interference with the plaintiff's prospective business relations. The Court must accept these allegations as true under R. Civ. P. 12(b)(6) and the defendants have not under R. Civ. P. 56 challenged the existence of any evidentiary underpinning. The plaintiff points out that § 9-1-13(a) has been held unequivocally to apply to this claim. McBurney v. Roszkowski,687 A.2d 447, 448 (R.I. 1997). The ten year period would apply to this claim, except that § 9-1-25 trumps § 9-1-13(a). The special provision limits the general one. G.L. § 43-3-26.
Count VII purports to allege a claim of unjust enrichment. Unjust enrichment claims usually arise out of implied contracts. The plaintiff in such a case has usually voluntarily conferred a benefit upon the defendants, for which the plaintiff ought in fairness be compensated. The conduct for which the plaintiff is compensated is not the wrongfulness of the accepting of the benefit, but the failure to pay a fair price for the benefit. See Hurdis Realty, Inc. v. Town of North Providence, 121 R.I. 275, 397 A.2d 896 (1979). The Court in the Hurdis case did not address the statute of limitations question, because the plaintiff had made out a claim in quasi-contract. In this case, as is pointed out above, the plaintiff's claim is not that he conferred a benefit upon the defendants for which he should be compensated, but rather, that the defendants took the benefit wrongfully. That conduct is plainly tortious not inequitable. The three year limit in § 9-1-25
applies to this claim.
Count VIII alleges that the plaintiff is entitled to indemnification from the defendants. Ordinarily, indemnity refers to an obligation to compensate a person for the wrongdoing of another, or to reimburse a person who has been held liable for the wrongful act of another. See Helgerson v. Mammoth Mart, Inc., 114 R.I. 438, 335 A.2d 339 (1975). It is difficult to discern any difference between the "indemnity" liability of the defendants and their direct liability for their tortious conduct. It is impossible to make out the inequity in the defendants' alleged failure to pay the plaintiff for the wrongdoing of another or because the plaintiff was obligated to pay someone for the defendants' wrongdoing. The Court finds that Count VIII is a tort claim in equitable clothing. Section 9-1-25 applies.
The Court is satisfied that the three year limitation contained in § 9-1-25 applies to all of the plaintiff's claims, irrespective of which legal theory he advances to support his claim to damages from the town.
Under § 9-1-25 the limitation period begins to run at "the time of accrual of any claim of tort." Over one hundred years ago our Supreme Court held that a plaintiff who sues in trespass to recover profits the plaintiff lost while the defendant was in wrongful possession would be limited to the limitation period before suit was commenced. The Court ruled that the cause of action accrued "when the trespasses were committed." Herreshoff v. Tripp, 15 R.I. 92, 94, 23 A. 104 (1885).
The defendants point out that their alleged wrongful entry on the land claimed by the plaintiff and the unreasonable channelization of the stream was complete before the end of 1986, when the town first agreed to restore the wetland it had altered. Their trespass, accordingly, would have been fully committed before the end of 1986 and the plaintiff's claim would have then accrued. Given that argument, the limitation period would have expired, unless tolled, before the end of 1989. There is no allegation or showing that the defendants' entry onto the land and channelization of the stream was clandestine or that the plaintiff was unaware of the defendants' activity at the time. The plaintiff must have been aware of the harmful consequences, if any, of the defendants' conduct at the time it occurred.
The plaintiff counters this argument with two arguments: First, the wrong of which he complains is a continuing wrong, so he is entitled to the damages he has sustained during the limitation period immediately just prior to the commencement of this action. Second, the defendants are estopped from asserting the statute of limitations because the town has admitted its liability by entering into the consent agreements of 1986 and 1987.
Considering the second argument first, the Court has carefully perused both consent agreements. Neither the plaintiff, nor any of his predecessors in the title, is a party to either agreement.
Both agreements rest on an assumption by the parties that the town had a right, or express or implied permission, to enter the land claimed by the plaintiff to remedy and restore wetlands. If the plaintiff's pleadings in this case are true, that assumption was not and is not valid. These agreements may be fatally flawed by a mutual mistake of fact.
The agreement by the town to remedy the wetlands violation was not made by the town for the benefit of the plaintiff or to induce the plaintiff not to sue the town for its wrongful invasion of his land. In fact, the town's compliance with terms of the agreement could be accomplished only by a further trespass, if the plaintiff's theory is correct. The entry by the town into these agreements is not an acknowledgment by the town of its liability to the plaintiff. At best they constitute an admission of violation of wetlands law and an obligation to remedy the effects of such a violation for the benefit of the public generally.
Gagner v. Strekouras, 423 A.2d 1168 (R.I. 1980) is not dispositive of the issue. That case involved the question of whether negotiations between a personal injury claimant and the defendant's liability insurance carrier which continue beyond the running of the statute can constitute a waiver of the statute by the defendant. The Court held at page 1169:
 ". . . settlement negotiations can bring on an estoppel if they are accompanied by certain statements or conduct calculated to lull the claimant into a reasonable belief that his claim will be settled without a suit." (Citing Greater Providence Trust Co., v. Nationwide Mutual Fire Insurance Co., 116 R.I. 268, 272, 355 A.2d 718, 720 (1976).
In this case there is no showing that the town's statements or conduct was calculated to lull the plaintiff into a reasonable belief that his claims would be resolved without a suit. In the absence of such a showing, there is no basis for an application of the doctrine of an estoppel against the town from asserting the running of the statute.
The Court is, however, satisfied that the channelizing of the stream appears from the pleading and the affidavits of the parties to be a continuing trespass, like the wall in Santilli v. Morelli, 102 R.I. 330, 336, 230 A.2d 860 (1967). As such, as the plaintiff contends, each day the stream remains channeled and the plaintiff's land remains disturbed by the alteration, the plaintiff has a new claim. Nor does it matter that title to the land has been transferred while the trespass has been ongoing. See Regan v. Cherry Corporation, 706 F. Supp. 145, 150-51 (D.R.I. 1989), for a conscientious and well-reasoned analysis of the state of the law in this jurisdiction on this issue.
The defendants' contention that the plaintiff was not the record titleholder at the time of the alleged initial trespasses is utterly beside the point. Until a defendant asserts a superior title in a case of this kind, the plaintiff's title is not in issue, and the plaintiff may rest on a possessory interest greater than that of the defendant. Lavin v. Dodge, 30 R.I. 8, 11 (1909). The defendant in this case does not claim a superior title to the plaintiffs. It asserts only that it had a right of entry and drainage appurtenant to an easement, not a fee.
The defendants' motion for summary judgment on the ground the plaintiff's claims are barred by the statute of limitations is granted in part and denied in part. The plaintiff's claims for damages for a continuing trespass are not barred. All other claims are barred.
 III. Plaintiff's Notice of the Defendants' Conduct when he Took Title
The defendants argue that the plaintiff knew, in 1991, when he took a deed from his father, that the town had entered the land and channelized the stream. Accordingly, the argument runs that the plaintiff has no grounds to complain about what happened to the land while it belonged to someone else.
He could simply not have taken title or reduced the purchase price by the diminution in value caused by the trespass. See, for example, Alegria v. Keeney, supra, at 1253-54 (knowledge of plaintiff of regulatory limitation on development of land relevant in determining reasonableness of investment-backed expectations). In the case of a continuing trespass, however, the transfer is not material, because the trespasser is alleged to have continued to trespass after the new owner takes title.
The motion cannot be granted on this ground.
 IV. The Public Duty Doctrine
Finally, the defendants claim that they are entitled to governmental immunity because the provisions of the public duty doctrine exempts them from the provisions of G.L. § 9-31-3. Since this Court has ruled that all of the plaintiff's claims, however denominated, plainly sound in tort, unless the doctrine applies, the town's immunity, which it might otherwise enjoy, has been waived by the statute.
According to the doctrine, Rhode Island government entities enjoy immunity from tort liability arising out of their discretionary governmental actions that, by their nature, are not ordinarily performed by private persons. Haley v. Town of Lincoln, 611 A.2d 845, 849 (R.I. 1992). The rationale behind the public duty doctrine is "to encourage the effective administration of governmental operations by removing the threat of potential litigation." Catone v. Medberry, 555 A.2d 328, 333 (R.I. 1989). See also, Quality Court Condominium Association v. Quality Hill Development Corporation, 641 A.2d 746, 750 (R.I. 1994).
To the extent the plaintiff is seeking to hold the defendant town liable in tort for its approval or disapproval of development plans in the exercise of its jurisdiction through its planning board, the doctrine applies in the absence of any of the established exceptions. Kashmanian v. Rongione, 712 A.2d 865, 867 (R.I. 1998). This Court has carefully considered the affidavits and memoranda of the parties and is aware that the existence of a special duty to a plaintiff and the egregious-conduct exception is not usually resolvable on summary judgment. Nonetheless, there is no showing that the town agencies, which approved the developments, which are claimed to be the cause of flooding the plaintiff's property, knew at the time of their approval that they were, by their decisions, causing special harm to the plaintiff. This case, like Kashmanian, is unlike Quality Court Condominium Association, where the municipal building inspector specifically knew who the victims of the official neglect and how they were affected by that neglect. 641 A.2d, at 750-51. In this case there is no evidence that the potential injury to the plaintiff's land caused by their approval of the development of other land was specifically brought to the attention of the planning board at the time. The evidence seems to be clear and unequivocal that the owner of the land at issue had notice of the proposed developments of other land, (as to some he was a developer), and the potential for an adverse impact on this land at the time.
He made no protest. He did not complain for over twenty years after the last approval. The plaintiff has not made any showing that there is any evidence which would support a finding of a special duty to him at the time of the approvals.
Nor is there any showing that the town's actions with regard to these developments constituted egregious conduct as defined in Verity v. Danti, 585 A.2d 65, 67 (R.I. 1991). There is no evidence to show that the town's conduct forced the plaintiff into a position of extreme peril, nor that the defendant had actual or constructive knowledge of the perilous circumstances, nor that the defendant failed to remedy or eliminate the danger. In fact, the evidence seems to point to the conclusion that the town's efforts to minimize or eliminate any consequences of the development of land around the plaintiff's land were frustrated by the state.
The town's conduct in 1985 is quite a different matter. The town's entry onto the plaintiff's land and its efforts to channelize Hardig Brook present different legal views from varying factual premises.
The town asserts that its conduct was an exercise of an easement. That being so, its conduct is the same as that of any private holder of a dominant tenancy pertinent to an easement. The public duty doctrine cannot apply, because the town was acting as if it were a private entity. There is a suggestion in the affidavit of the town engineer that the town's entry and channelizing the stream was an emergency exercise of the town's police powers. The cease and desist order, the notice of violation, and the consent agreements tend to indicate that there is a genuine fact dispute on the issue of any exercise of emergency police powers.
Even if the town's entry and its refusal to comply with the terms of the consent agreement were governmental acts, both the special duty exception and the egregious-conduct exception are arguably sustained by the plaintiff's affidavits, and present triable issues of fact. The motion will be denied.
 Conclusions
Based on the foregoing analysis:
 1. The defendants' motion for summary judgment on the ground that the plaintiff's claims are barred by the statute of limitation is granted in part and denied in part. It is denied with respect to claims arising out of a continuing trespass. It is granted with respect to all other claims.
 2. The defendants' motion for summary judgment on the ground that their conduct was justified in the exercise of an easement is denied.
 3. The defendants' motion to dismiss or for summary judgment on the ground that the plaintiff's claims are barred by sovereign immunity through application of the public duty doctrine is denied.
 4. The defendants' motion to dismiss or for summary judgment based on the plaintiff's lack of title at the time of its conduct is denied.