Gene ANDERSON, Plaintiff-Respondent,†

v.

Duane HEBERT, Defendant-Appellant,

COUNTY OF BARRON, Defendant.††

Court of Appeals

*No. 2012AP1313. Submitted on briefs January 8, 2013.
—Decided March 5, 2013.*

2013 WI App 54

(Also reported in 830 N.W.2d 704.)

† Petition for Review Filed.
†† Petition for Cross Review filed May 2, 2013.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Oyvind Wistrom* of *Lindner & Marsack, S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peter M. Reinhardt* of *Bakke Norman, S.C.*, Menomonie.

Before Hoover, P.J., Mangerson, J., and Thomas Cane, Reserve Judge.

¶ 1. HOOVER, P.J. Duane Hebert appeals a $150,000 defamation judgment. Hebert, who was acting in the scope of his employment as county administrator when he made the defamatory statements, argues he was immune from suit based on either an executive or legislative absolute privilege. Alternatively, Hebert ar-

gues Wis. Stat. § 893.80(3)[1] limited his liability to a single $50,000 cap. We conclude Anderson was not entitled to either absolute privilege, but his liability was limited to $50,000. We therefore affirm in part, reverse in part, and direct the circuit court to reduce the judgment to $50,000.

## BACKGROUND

¶ 2. Gene Anderson was employed as the patrol superintendent for the Barron County highway department when an issue arose concerning improper billing of work to the state. Hebert was the county administrator at the time. Anderson sued Hebert for defamation concerning numerous statements Hebert made both directly to the media and to the county board of supervisors at open meetings.

¶ 3. The allegedly defamatory statements were presented to the jury via three separate verdict forms. Two groups of statements were made to the county board of supervisors on January 14, 2008, and March 17, 2008, respectively. The statements in the third verdict were made to local media in late January 2008. The gist of the statements was that Anderson was not only aware of the improper billing procedures, but was also encouraging or directing the practice.

¶ 4. As to all three verdict forms, the jury found: Hebert made statements that damaged Anderson's reputation, the statements were not true or substantially true, Hebert made the statements with reckless disregard of their truth or falsity, and Hebert made the statements within the scope of his employment. The jury awarded damages of $50,000 each on two verdicts, and

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

$75,000 on another. However, the court applied the $50,000 damages cap set forth in Wis. Stat. § 893.80(3) to each verdict, resulting in a total adjusted award of $150,000. Hebert now appeals.

## DISCUSSION

¶ 5. A statement is defamatory if it tends to harm the reputation of another so as to lower that person in the estimation of the community or deter third persons from associating or dealing with him or her. *Vultaggio v. Yasko*, 215 Wis. 2d 326, 330, 572 N.W.2d 450 (1998). " 'However, not all defamations are actionable. Some defamations fall within a class of conduct which the law terms privileged.' " *Id.* (quoting *Zinda v. Louisiana Pac. Corp.*, 149 Wis. 2d 913, 921, 440 N.W.2d 548 (1989)).

¶ 6. Hebert principally argues his statements were protected by an absolute privilege. Privilege is either absolute or conditional. *Id.* Absolute privilege provides complete immunity from liability, even if the person is motivated by malice or ill will and knows the statement to be false.[2] *Id.* at 331. Whether an absolute privilege applies is a question of law subject to de novo review. *Id.* at 330.

*Executive Privilege*

¶ 7. Our state supreme court recognized an executive absolute privilege in *Ranous v. Hughes*, 30

[2] A conditional privilege, on the other hand, may be forfeited if the privilege is abused in one of numerous ways. *Vultaggio v. Yasko*, 215 Wis. 2d 326, 331, 572 N.W.2d 450 (1998). As relevant here, a conditional privilege may be forfeited if the statements were made with reckless disregard of their truth or falsity. *See id.*

Wis. 2d 452, 141 N.W.2d 251 (1966). The court observed, "It is a general rule that absolute privilege is accorded principal federal or state executive officers in the exercise of their duties." *Id.* at 464–65 (citing RESTATEMENT (FIRST) OF TORTS § 591 (1938); PROSSER, TORTS 801–04, § 109 (3d ed.); 1 HARPER AND JAMES, LAW OF TORTS, 429–30, § 5.23). Further, it explained that, consistent with the Restatement, the majority rule was that the "lower strata of executive officials such as [a director or chairperson of the board of education]" are entitled to only a conditional privilege. *Id.* at 465, 467.

¶ 8. The court acknowledged the competing values of allowing government officials to perform their duties without fear of liability for what they say, and protecting private citizens' reputations. It then held:

> Giving due weight to these competing values, we feel that with respect to all but executive officers in the higher echelons of government the according of conditional privilege rather than absolute privilege is preferable. Therefore we conclude that school board members do not fall within the category of high ranking executive officials of government whose defamatory acts should be accorded absolute privilege.

*Id.* at 466–67.

¶ 9. Hebert asks us to extend the executive absolute privilege to him as administrator of a political subdivision of the state, i.e., a county. Our state supreme court has not suggested which positions might fall into the categories of principal state executive officers or higher echelons of government. However, we are satisfied that a county administrator would fall into the same class or echelon of government as a school board director or chairperson. Therefore, as a lower strata executive, Hebert was not entitled to an absolute

privilege. Further, while a county executive might be comparatively higher on the scale than a school board director, it is not this court's place to extend an absolute privilege to a position for which one has not been recognized by the state supreme court.

*Legislative Privilege*

█

¶ 10. Hebert next argues that two of his three sets of defamatory statements, those made before the county board, were protected by an absolute legislative privilege. He asks us to apply the RESTATEMENT (SECOND) OF TORTS § 590A (1977), which provides that "[a] witness is absolutely privileged to publish defamatory matter as part of a legislative proceeding in which he is testifying or in communications preliminary to the proceeding, if the matter had some relation to the proceeding." owever, our state supreme court rejected this rule in *Vultaggio*.

¶ 11. In *Vultaggio*, the court declined to extend an absolute privilege to a witness testifying at a city council hearing. *Vultaggio*, 215 Wis. 2d at 329. However, the court's holding was guided by the specific circumstances presented there, a "situation with little guidance, structure or control for the witness's testimony . . . ." *Id.* at 328, 338. The court observed that the witness spoke at the meeting "without any supervision from the council itself. There was no fear of punishment should she lie, she was not sworn to tell the truth, nor was her testimony limited by questions from members of the council." *Id.* at 340–41. The court's decision suggests it would, however, recognize an absolute privilege where a witness was subpoenaed to testify, placed under oath, and controlled by the direction of questions from the legislative body. *See id.* at 342–43.

¶ 12. Here, Hebert was reporting to the county board as required by his employment. He was not sworn under oath and his defamatory statements were not offered in response to board questions. More importantly, Hebert spoke not as a witness, but in his executive capacity, and the board was not acting in a legislative manner in the first place.

¶ 13. While a county board may act in a legislative capacity, it may also act in a supervisory or administrative capacity, such as by receiving reports during a meeting. *See, e.g., Isle of Wight County v. Nogiec,* 704 S.E.2d 83 (Va. 2011) (county board not acting in a legislative capacity when receiving a report from an assistant county administrator). Here, the board was conducting a regular meeting and not considering any existing or potential legislation. Hebert cannot claim a legislative privilege before a body that is not legislating.

*Damages Cap*

¶ 14. Finally, Hebert argues that a single damages cap of $50,000 should have applied to the judgment, rather than separate caps applied to each of the three verdicts. WISCONSIN STAT. § 893.80(3) provides: "[T]he amount recoverable by any person for any damages, injuries or death in any action founded on tort against any . . . governmental subdivision or . . . their officers . . . or employees . . . shall not exceed $50,000." The parties dispute the meaning of "action."

¶ 15. Statutory interpretation begins with the language of the statute. *Seider v. O'Connell,* 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659. If the

meaning of the statute is plain, the inquiry normally ends there. *Id.* However, we "must consider as a whole and harmonize related sections of a statute." *Apple Valley Gardens Ass'n v. MacHutta*, 2007 WI App 270, ¶ 16, 306 Wis. 2d 780, 743 N.W.2d 483. Further, as a general rule, "[a]ll words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning." Wis. Stat. § 990.01(1). Statutory interpretation presents a question of law subject to de novo review. *Seider*, 236 Wis. 2d 211, ¶ 26.

¶ 16. Relying on both legal and standard dictionary definitions, Hebert contends "action" refers to a judicial proceeding. Anderson, on the other hand, emphasizes that Wis. Stat. § 893.80 twice utilizes the term "suit" in other subsections. According to Anderson, "[o]bviously, 'suit' means a judicial proceeding or case." Thus, Anderson argues, action cannot mean a judicial proceeding because the "legislature would not use two different words to convey the same concept." Instead, Anderson contends action refers to "cause of action."

¶ 17. Anderson's interpretation is unreasonable. First, his argument undermines his own position. The legislature also used both "action" and "cause of action" in Wis. Stat. § 893.80. And, while the legislature used the terms suit and action only in distinct subsections, it used action and cause of action within the same subsection. Subsection (1d) provides: "[N]o *action* may be brought . . . against any . . . governmental subdivision . . . upon a claim or *cause of action* . . . ." (Emphasis added.) Thus, when Anderson's rationale is at its strongest, it refutes his interpretation.

¶ 18. Second, Anderson's interpretation is supported only by citations to cases that he concedes are

irrelevant. Without developing any reasoned argument, Anderson cites two cases he claims support his interpretation: *Wilmot v. Racine County*, 136 Wis. 2d 57, 400 N.W.2d 917 (1987), and *Wood v. Milin*, 134 Wis. 2d 279, 397 N.W.2d 479 (1986). We may, of course, disregard undeveloped arguments. *See State v. Flynn*, 190 Wis. 2d 31, 39 n.2, 527 N.W.2d 343 (Ct. App. 1994). Regardless, both *Wilmot* and *Wood* concerned interpretation not of "action," but of the "any person" language in Wis. Stat. § 893.80(3). Indeed, after relying on *Wood*, Anderson curiously turns around and attacks Hebert's reliance on that very case. Anderson asserts that because *Wood* and another case Hebert cites "involve[d] the issue of 'any person,'" they are "not helpful or instructive with respect to the issue before this court."[3] We agree with Anderson on this point.

¶ 19. However, we agree with Hebert that the plain meaning of action is a judicial proceeding. The legal dictionary definition of action is: "A civil or criminal judicial proceeding." Black's Law Dictionary 31 (8th ed. 2004). Further, Black's explains, "The terms 'action' and 'suit' are nearly if not quite synonymous[,]"

[3] Notably, the other case that Hebert cites, *Schwartz v. Milwaukee*, 54 Wis. 2d 286, 195 N.W.2d 480 (1972), when interpreting the predecessor statute utilizing the same language as the present version, held the statute referred "to the amount each person is limited in his recovery, not to how many injuries, accidents or causes of action."

Further, while Anderson relies specifically on the concurrence in *Wilmot*, the very purpose of that concurrence was disavowance of "the cause of action concept." *See Wilmot v. Racine Cnty.*, 136 Wis. 2d 57, 65, 400 N.W.2d 917 (1987) (Abrahamson, J., concurring). In support of her position, Justice Abrahamson observed, "The statute uses the word 'action,' not the phrase 'cause of action[.]'" *Id.* at 66.

although the former historically referred to proceedings in courts of law and the latter to those in courts of equity. *Id.* (source omitted). Similarly, the standard dictionary definition of action is:

(1) a legal *proceeding* by which one demands or enforces one's right in a court of justice;

(2) a judicial *proceeding* for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense . . .;

(3) the right to bring or maintain such a legal or judicial *proceeding*—see *SUIT.*

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 21 (unabr. 1993) (punctuation and formatting modified) (emphasis added).[4]

¶ 20. In any event, the legislature itself has essentially defined the term action as a judicial proceeding. WISCONSIN STAT. § 801.01(1) provides: "Proceedings in the courts are divided into actions and special proceedings. 'Action' as used in chs. 801 to 847, includes 'special proceeding' . . . ." Further, WIS. STAT. § 801.02 states that an action is commenced when a summons and complaint is filed. In addition, the applicable statute of limitations —which distinguishes between action and cause of action—implies that action refers to a proceeding. It provides: "An *action* to recover damages for libel, slander, . . . or other intentional tort . . . shall be commenced within 3 years after *the cause of action* accrues or be barred." WIS. STAT. § 893.57 (emphasis added).

¶ 21. Considering the foregoing definitions and statutes, it is evident that the plain meaning of action is a judicial proceeding. While two other subsections

---

[4] Anderson does not offer any dictionary definitions.

within Wis. Stat. § 893.80 utilize the term suit, those sections are unrelated; they operate independently and without reference to subsection (3). Thus, it does no mischief to interpret suit and action to have the same meaning. Indeed, the terms are commonly used interchangeably.

¶ 22. Further, if the legislature intended that Wis. Stat. § 893.80(3)'s damages cap be stackable based upon an individual's separate claims or causes within a single proceeding, it would have stated as much. In fact, not only does § 893.80 refer once to cause of action, it refers to the terms "claim" or "claims" not fewer than sixteen times. Finally, our interpretation finds support in subsection (3)'s repeated plural usage, referring to the single limit applicable for "any damages [or] injuries" for "acts done . . . ."[5]

¶ 23. Here, Anderson alleged Hebert made various defamatory statements on three separate occasions. Nonetheless, Anderson brought his claims in a single action. Because Wis. Stat. § 893.80(3) provides for one damages cap, per person, per action, the judgment must be reduced accordingly. We therefore direct the circuit court to reduce the judgment to $50,000.

¶ 24. No Wis. Stat. Rule 809.25 costs allowed.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

---

[5] We recognize that Wis. Stat. § 893.80(3) refers to death in the singular. However, "any person" can only suffer a single death.